UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SHAKEERAH IMANI FREDERICKS,

Plaintiff,

-v.-

NEW YORK CITY DEPARTMENT OF
EDUCATION and UNITED FEDERATION
OF TEACHERS,

Defendants.

24 Civ. 1112 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

Plaintiff Shakeerah Imani Fredericks ("Plaintiff" or "Ms. Fredericks"), who is proceeding *pro se*, brought this action against the New York City Department of Education ("DOE") and the United Federation of Teachers ("UFT") (collectively, "Defendants"). Plaintiff seeks redress for disability-based discrimination, retaliation, and other injuries that she allegedly suffered while employed at DOE, and for UFT's failure to fairly represent her in subsequent grievance proceedings. In her operative pleading, the First Amended Complaint (the "FAC"), Plaintiff alleges four causes of action under the Americans with Disabilities Act (the "ADA"), 42 U.S.C. ch. 126, and rules promulgated thereunder, as well as one cause of action under the National Labor Relations Act (the "NLRA"), 29 U.S.C. §§ 151-169. Before the Court are (i) UFT's motion to dismiss Plaintiff's single NLRA claim against it under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and (ii) DOE's motion to dismiss the four ADA claims against it under Rule 12(b)(6). For the reasons set forth below, the Court grants both motions.

## BACKGROUND[1]

### A.   Factual Background

Plaintiff Shakeerah Imani Fredericks was employed by DOE from 2016 to 2018 and then again from 2020 to 2023.  (FAC 1, 4).  During her employment at DOE, Ms. Fredericks was also a member of UFT, which is the "exclusive bargaining representative for … paraprofessionals employed" by DOE.  (Ainslie Decl. ¶ 5; *see* FAC 1, 4).  As relevant here, on July 28, 2021, Ms. Fredericks was appointed to a civil service position — Field Communications Associate for DOE's Office of Policy and Evaluation ("OPE") — with a one-year probationary

---

[1]   This Opinion draws its facts from the First Amended Complaint (the "FAC" (Dkt. #29)), the well-pleaded allegations of which are taken as true for purposes of this Opinion. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678-79 (2009).  The Court also considers certain exhibits attached to the FAC, which are found in the affidavit of Ms. Fredericks ("Fredericks Aff., Ex. [ ]" (Dkt. #30) (covering Ex. 1-32)) as well as three additional sets of exhibits ("Fredericks First Exhibit Set, Ex. [ ]" (Dkt. #33) (covering Ex. 33-60), "Fredericks Second Exhibit Set, Ex. [ ]" (Dkt. #34) (covering Ex. 61-90), and "Fredericks Third Exhibit Set, Ex. [ ]" (Dkt. #35) (covering Ex. 91-104)), each of which is incorporated by reference in the FAC.  *See DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that on a motion to dismiss, courts may consider documents incorporated by reference in or integral to a complaint).  In addition, the Court relies, as appropriate, on the affidavit of Ms. Fredericks ("Fredericks Aff." (Dkt. #30)); the declaration of Brandon Weisman in support of DOE's motion to dismiss ("Weisman Decl." (Dkt. #43)) and the exhibit attached thereto ("Weisman Decl., Ex. A"); and the declaration of Gregory M. Ainsley in support of UFT's motion to dismiss ("Ainsley Decl." (Dkt. #63)) and the exhibits attached thereto ("Ainsley Decl., Ex. [ ]").  The Court notes that Ms. Fredericks filed additional exhibits attached to her oppositions (Dkt. #48, 66) as well as certain audio recordings (Dkt. #67-68; *see* Dkt. #69-70).  Because those documents were filed long after the FAC and were not incorporated by reference, the Court need not consider them.  *See McCarthy* v. *Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (limiting the scope of review to "facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference").

For ease of reference, the Court refers to DOE's memorandum of law in support of its motion to dismiss as "DOE Br." (Dkt. #44); Plaintiff's affidavit in opposition to DOE's motion as "Pl. DOE Opp." (Dkt. #48); DOE's memorandum of law in reply as "DOE Reply" (Dkt. #49); UFT's memorandum of law in support of its motion to dismiss as "UFT Br." (Dkt. #64); Plaintiff's affidavit in opposition to UFT's motion as "Pl. UFT Opp." (Dkt. #66); and UFT's memorandum of law in reply as "UFT Reply" (Dkt. #73).

period, which was subject to extension.  (FAC 1; Fredericks Aff., Ex. 1 at 1).

During the probationary period, Ms. Fredericks allegedly endured harassment

that triggered her depression, post-traumatic stress disorder ("PTSD"), and

borderline personality disorder, three mental disabilities with which she was

diagnosed in September 2021.  (FAC 2; Fredericks Aff. ¶ 114d).  Specifically,

Ms. Fredericks experienced stressors caused by her direct supervisor, Katie

Hansen, who allegedly harassed her about her work performance, including

timekeeping and attendance, and who was responsible for approving Ms.

Fredericks's timesheets.  (FAC 2; *see* Fredericks Aff. ¶¶ 1-3).  According to Ms.

Fredericks, she arrived to work mostly on time — between 8:00 a.m. and 9:00

a.m. — and otherwise indicated any early departures and absences to Ms.

Hansen, who nevertheless kept track of Ms. Fredericks's timesheet and

inquired about delays in Ms. Fredericks's work projects.  (FAC 2; Fredericks

Aff. ¶¶ 3, 7).[2]

To alleviate those stressors, on May 16, 2022, Ms. Fredericks sent a

request to Ms. Hansen for a reasonable accommodation — that she be moved

to a different room from that in which Ms. Hansen worked.  (FAC 2; Fredericks

Aff. ¶ 9).  Ms. Hansen responded the same day and asked for more "information

about the limitations [Ms. Fredericks's] diagnoses were causing, how they

impair[ed] her ability to do job functions, and what [Ms. Fredericks] would

---

[2]     A timesheet covering the period between October 4, 2021, and June 24, 2022, during
which period Ms. Fredericks worked at OPE, indicates greater variation in her arrival
and departure times than what Ms. Fredericks represented in the FAC.  (*See* Fredericks
Aff., Ex. 32).

like … to modify so that she can be successful." (Fredericks Aff. ¶ 9).  Ms. Fredericks did not provide that information because she believed that Ms. Hansen "was being invasive in writing to provide the accommodation" and that Ms. Fredericks "was being set up to reveal … that [Ms.] Hansen [wa]s the reason that [Ms. Fredericks] d[id] not feel safe at her desk." (*Id.* ¶ 10).  Ms. Hansen then set up a meeting between herself, Ms. Fredericks, and OPE's director of operations.  (*Id.*).  Ms. Fredericks did not attend the meeting.  (*See id.* ¶ 11).  From Ms. Fredericks's perspective, Ms. Hansen never addressed whether Ms. Fredericks's "work ethic, performance, and conduct had anything to do with preventing her request from being honored right away," and her accommodation request should have been approved based on the mental health diagnoses alone.  (*Id.* ¶¶ 10-14).  Ms. Fredericks noted that she "would not agree to meet in-person" unless she was given an explanation as to "what additional information was needed to accommodate her request for [a] reasonable accommodation." (*Id.* ¶ 15).

DOE did not approve Ms. Fredericks's request to change desks.  (FAC 3; *see* Fredericks Aff. ¶ 16).  Instead, Ms. Fredericks allegedly suffered retaliation from Ms. Hansen, who continued to harass Ms. Fredericks about her work performance, became "extremely strict" about timekeeping, and attempted to extend Ms. Fredericks's probationary period.  (FAC 3, 5).  This pattern of retaliation continued for another five weeks, during which time Ms. Fredericks continued to work under Ms. Hansen's supervision "without the reasonable accommodation she requested." (Fredericks Aff. ¶ 30).

On June 25, 2022, near the end of Ms. Fredericks's initial probationary period at OPE, she was offered a promotion and appointed to the position of a Level 2 Education Officer on a different team, which position paid her an annual salary of $100,500.  (FAC 1, 3; Fredericks Aff. ¶¶ 31, 33).  Ms. Fredericks described her new position as a permanent appointment (FAC 1), but she also acknowledged that on her first day in the new role, her new supervisor, Michael Hickey, "gave her an ultimatum to sign a form extending her probation" (*id.* at 3; Fredericks Aff. ¶¶ 33-35).  She signed the form, thus agreeing to extend her probationary period.  (Fredericks Aff. ¶ 34).  At the time, Ms. Fredericks believed that Ms. Hansen's "harassment followed her to her next role." (*Id.*).  Thereafter, Ms. Fredericks struggled on the job because she was treated poorly by her new team, which allegedly "removed her direct report and isolated her to work mostly alone." (FAC 5; *see* Fredericks Aff. ¶ 41).  In her personal life, Ms. Fredericks also struggled to afford necessities like food and household goods.  (Fredericks Aff. ¶ 46).  Ms. Fredericks told Mr. Hickey about those struggles and that several colleagues had lent her money in the past.  (*Id.*).  Upon hearing about Ms. Fredericks's struggles, Mr. Hickey sent Ms. Fredericks $400 via Venmo.  (*Id.*).

Several months later, on January 17, 2023, Ms. Fredericks was terminated from DOE due to an "unsatisfactory probationary period."  (FAC 1, 3).  According to Ms. Fredericks, she never received a formal warning or evaluation of her work performance during the probationary period.  (*Id.* at 1).  Right before her termination, however, Ms. Fredericks participated in a

disciplinary hearing, where an investigation revealed that Mr. Hickey had given her a loan of $400 and where she was informed that such conduct may have violated DOE's conflict-of-interest rules.  (Fredericks Aff. ¶¶ 69, 74).  Ms. Fredericks had first been informed of the investigation into "money given to her by her supervisor and co-workers" in September 2022.  (*Id.* ¶ 53).  At the January 17, 2023 meeting where she was terminated, Ms. Fredericks was told that DOE made the termination decision based on the conclusion of the disciplinary hearing and investigation.  (*Id.* ¶ 75).

Following her termination, Ms. Fredericks went to her union, UFT, "in the hopes of being reinstated and compensated with back pay."  (FAC 2).  UFT engaged Ms. Fredericks in a two-step grievance process, which took place from February to March 2023.  (*Id.*).  First, on January 19, 2023, UFT filed a grievance challenging Ms. Fredericks's termination under the collective bargaining agreement between DOE and UFT.  (Ainsley Decl. ¶ 12; *see* Ainsley Decl., Ex. 7).  Then, because Ms. Fredericks's grievance was not resolved at step one, UFT advanced the claim to step two on February 16, 2023.  (Ainsley Decl. ¶¶ 13-15; *see* Ainsley Decl., Ex. 10).  DOE ultimately denied the grievance claim, and on July 25, 2023, UFT notified Ms. Fredericks of DOE's determination.  (FAC 2).  Ms. Fredericks's UFT membership expired at the end of September 2023.  (*Id.*).

**B.     Procedural Background**

Before coming to federal court, Ms. Fredericks first made use of other resources and procedures.  On July 26, 2023, a day after receiving UFT's

notification of DOE's denial of her grievance claim, Ms. Fredericks filed a complaint with the New York State Division of Human Rights (the "NYSDHR"). (*See* Fredericks Second Exhibit Set, Ex. 83).  A few months later, on October 23, 2023, she also filed a charge of discrimination with the federal Equal Employment Opportunity Commission (the "EEOC").  (*See id.*, Ex. 88). The EEOC notified Ms. Fredericks on November 15, 2023, that it would "not be able to investigate and conciliate th[e] charge within 180 days of the date the [EEOC] assumed jurisdiction over the charge" and gave her the right to sue in federal court within 90 days.  (*See id.*, Ex. 89).

Ms. Fredericks filed a complaint in this Court on February 12, 2024. (Dkt. #1).  Her initial complaint named only DOE as Defendant and alleged claims of disability discrimination, retaliation, hostile work environment, wrongful termination, failure by her union to overturn the wrongful termination and reinstate her, and distress "beyond normal expectations" under the ADA, New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law §§ 290 to 301, and New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code §§ 8-101 to 8-134.  (*Id.* at 4-5, 13-50).  After seeking and receiving an extension from this Court (*see* Dkt. #11-14), DOE responded on June 10, 2024, by requesting a pre-motion conference to discuss its anticipated motion to dismiss (Dkt. #16).  Among several reasons provided in its pre-motion letter, DOE argued that Ms. Fredericks had failed to join UFT as a necessary party because her allegations regarding UFT's handling of her grievance process could not be brought against DOE.  (*Id.* at 2).  The Court granted DOE's

request (Dkt. #19), and the pre-motion conference took place on October 10, 2024 (October 10, 2024 Minute Entry).  At the conference, the Court gave Ms. Fredericks an opportunity to amend her complaint and address the deficiencies raised by DOE.  (*Id.*).

On January 31, 2025, Ms. Fredericks filed her FAC, the operative pleading in this case, naming both DOE and UFT as Defendants.  (*See generally* FAC).[3]  Against DOE, she brought four claims under the ADA and related regulations, alleging that DOE had (i) committed adverse employment actions, including the creation of a hostile work environment and unlawful termination, (ii) retaliated against Plaintiff after she engaged in a protected activity, (iii) unlawfully terminated Plaintiff after she requested a reasonable accommodation, and (iv) failed to meet Plaintiff's request for a reasonable accommodation and provide a determination as to why her request could not be accommodated.  (*Id.* at 6).  Against UFT, Ms. Fredericks alleged that it failed to fairly represent her in the grievance process, in violation of the NLRA.  (*Id.* at 7).  Ms. Fredericks sought monetary relief, protection against Defendants, and

---

[3]     Plaintiff dropped her NYSHRL and NYCHRL claims in the FAC.  In general, when a *pro se* complaint contains factual allegations supporting such claims, the district court is required to "construe [the] complaint as asserting claims under those laws, even if [the *pro se* plaintiff] failed to check the appropriate blank[s]" for NYSHRL and NYCHRL on the complaint form.  *McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154, 158 (2d Cir. 2017) (per curiam).  Here, however, Plaintiff initially alleged NYSHRL and NYCHRL claims but did not bring them again after learning about the deficiencies in her original complaint and being given an opportunity to amend her complaint at the pre-motion conference.  Therefore, the Court does not deem Plaintiff to have raised NYSHRL and NYCHRL claims under *McLeod*.  Even so, the Court notes that because it has decided to dismiss Plaintiff's federal claims, it would have declined to exercise supplemental jurisdiction over any possible NYSHRL and NYCHRL claims in any event.  *See Kolari* v. *N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122-24 (2d Cir. 2006).

support for any DOE employee "currently enduring what … [P]laintiff did." (*Id.* at 7-8).

Defendant DOE once again requested a pre-motion conference in anticipation of filing a motion to dismiss. (Dkt. #37). The Court dispensed with its typical pre-motion conference requirement and provided the parties with a briefing schedule. (Dkt. #39). On March 17, 2025, DOE filed its motion to dismiss the FAC along with supporting papers. (Dkt. #42-45). On April 10, 2025, Ms. Fredericks filed her opposition, in which she raised additional claims. (Dkt. #48). And on April 24, 2025, DOE filed its reply. (Dkt. #49). Then, after UFT appeared on the docket, it also requested a pre-motion conference in anticipation of filing a motion to dismiss. (Dkt. #59). The Court similarly waived its requirement for a pre-motion conference and set a briefing schedule. (Dkt. #60). On June 27, 2025, UFT filed its motion to dismiss the FAC as well as supporting papers. (Dkt. #62-65). Ms. Fredericks filed her opposition on July 13, 2025. (Dkt. #66). UFT replied on August 8, 2025. (Dkt. #73). Both motions to dismiss are now fully briefed.

## DISCUSSION

### A.    Applicable Law

Under Rule 12(b)(1), a party may move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000). In resolving such

9

a motion, the district court "may refer to evidence outside the pleadings." *Id.*
In addition, as the party asserting subject matter jurisdiction, the plaintiff
bears "the burden of proving by a preponderance of the evidence that it exists."
*Id.* Finally, "[w]hen a defendant moves to dismiss under Rule 12(b)(1) for lack
of subject matter jurisdiction, and also moves to dismiss on other grounds, the
[c]ourt must consider the Rule 12(b)(1) motion first." *Bellocchio* v. *Garland*, 614
F. Supp. 3d 11, 17 (S.D.N.Y. 2022) (internal quotation marks omitted) (quoting
*Reliability Inc.* v. *Doki*, No. 20 Civ. 7109 (KPF), 2021 WL 3408589, at *6
(S.D.N.Y. Aug. 4, 2021)).

On a Rule 12(b)(6) motion, the court "draw[s] all reasonable inferences in
[the plaintiff's] favor, assume[s] all well-pleaded factual allegations to be true,
and determine[s] whether they plausibly give rise to an entitlement to relief."
*Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation
marks omitted) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d
Cir. 2009)); *see Ashcroft* v. *Iqbal*, 556 U.S. 662, 678-79 (2009). A plaintiff is
entitled to relief if she alleges "enough facts to state a claim to relief that is
plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007).
Nevertheless, the court is "not bound to accept conclusory allegations or legal
conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517
F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted) (quoting *Smith*
v. *Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)). Indeed, a
plaintiff must do more than provide a "formulaic recitation of the elements of a

10

cause of action" — that is, her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In *pro se* cases, the court must "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (per curiam) (internal quotation marks omitted) (quoting *Bertin* v. *United States*, 478 F.3d 489, 491 (2d Cir. 2007)). The Supreme Court has instructed that "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson* v. *Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle* v. *Gamble*, 429 U.S. 97, 106 (1976)). At the same time, even "a *pro se* complaint must state a plausible claim for relief." *Walker* v. *Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

## B.    The Court Grants UFT's Motion to Dismiss Under Rule 12(b)(1)

In the FAC, Ms. Fredericks alleged that UFT "committed an unfair labor practice … by failing to represent [her] fairly" in the grievance process, in violation of Section 8(b)(1)(A) of the NLRA, 29 U.S.C. § 158(b)(1)(A). (FAC 4, 7). According to Ms. Fredericks, UFT "dropped the grievance without justification," failed to arbitrate against DOE, and "demonstrated extreme passivity" and neglect in her case. (*Id.* at 7).

"It is well settled that this Court lacks subject matter jurisdiction over duty of fair representation claims brought by employees of political subdivisions." *Gear* v. *Dep't of Educ.*, No. 07 Civ. 11102 (NRB), 2010 WL

11

5297850, at *3 (S.D.N.Y. Dec. 21, 2010), *aff'd*, 472 F. App'x 67 (2d Cir. 2012) (summary order).  The Supreme Court has noted that the NLRA "specifically exempts States and subdivisions (and therefore cities and their public school boards) from the definition of 'employer' within the Act."  *Police Dep't of City of Chi.* v. *Mosley*, 408 U.S. 92, 102 n.9 (1972); *accord* 29 U.S.C. § 152(2) ("The term 'employer' … shall not include … any State or political subdivision thereof."); *id.* § 152(3) ("The term 'employee' … shall not include … any individual employed … by any other person who is not an employer as herein defined.").  And "[b]ecause there is no federal jurisdiction over the employer, there is no jurisdiction over the companion claim of breach of the duty of fair representation."  *Smith* v. *United Fed'n of Tchrs.*, No. 97-7678, 1998 WL 639756, at *1 (2d Cir. Mar. 26, 1998) (summary order); *see also Ford* v. *D.C. 37 Union Loc. 1549*, 579 F.3d 187, 188 (2d Cir. 2009) (per curiam) (clarifying in a published opinion that it is "the law of [the] Circuit" that public employees are not covered by the statutory definition in Section 152(2)).  For this reason, the court in *Gear* dismissed — and the Second Circuit in *Smith* similarly upheld the dismissal of — duty-of-fair-representation claims brought by a former DOE employee against UFT under the Labor Management Relations Act, which shares the relevant definitions with the NLRA, for lack of subject matter jurisdiction.  *Gear*, 2010 WL 5297850, at *3-4; *see Smith*, 1998 WL 639756, at *1.

This case is no different.  Ms. Fredericks's former employer is the same DOE, which is a political subdivision of New York State and therefore not an

12

"employer" under the NLRA.  In addition, Ms. Fredericks herself does not qualify as an "employee" under the NLRA.  Accordingly, she cannot maintain an NLRA-based action against UFT for breach of the duty of fair representation. *See Gear*, 2010 WL 5297850, at *4.  This Court lacks the statutory authority to adjudicate Ms. Fredericks's claim against UFT and therefore dismisses it under Rule 12(b)(1) without reaching the merits of the claim and considering UFT's alternative arguments under Rule 12(b)(6).[4]

## C.     The Court Grants DOE's Motion to Dismiss Under Rule 12(b)(6)

### 1.     Plaintiff's Claims Are Partially Time-Barred

#### a.     Plaintiff Did Not File an Administrative Charge Within 300 Days of Some of the Alleged Discriminatory Acts

Under the ADA, "a plaintiff must exhaust her administrative remedies by filing a charge with the EEOC within 300 days of a discriminatory act." *McPartlan-Hurson* v. *Westchester Cmty. Coll.*, 804 F. App'x 41, 43 (2d Cir. 2020) (summary order) (citing 42 U.S.C. §§ 2000e-5(e)(1), 12117(a)); *see also Davis-Garett* v. *Urb. Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) ("As for the permissible temporal scope of a federal claim of employment discrimination, generally if the plaintiff has initially filed an administrative claim in a state whose laws prohibit such discrimination, the limitations period for filing an

---

[4]     To the extent that Plaintiff's FAC can be construed to give rise to a state-law claim of unfair representation, the Court declines to exercise supplemental jurisdiction over such a claim because it has already dismissed the federal claim for lack of subject matter jurisdiction.  *See Harris* v. *Vasallo*, No. 23 Civ. 4440 (LTS), 2023 WL 4423558, at *4 (S.D.N.Y. July 10, 2023) ("A district court may decline to exercise supplemental jurisdiction over state-law claims … when it 'has dismissed all claims over which it has original jurisdiction.'" (quoting 28 U.S.C. § 1367(c)(3))).

13

action is 300 days after the alleged unlawful practice.").  Accordingly, claims about discrete acts — such as termination, denial of transfer, and other conduct that took place at a specific time and place — are time-barred if they occurred outside of the 300-day window.  *McPartlan-Hurson*, 804 F. App'x at 43; *see Ciotti* v. *City of New York*, No. 23 Civ. 10279 (ER), 2025 WL 308022, at *9 (S.D.N.Y. Jan. 27, 2025) ("This '300-day rule' operates as a statute of limitations, barring all claims arising outside of it.").

At the same time, courts have also recognized the continuing violation doctrine, which allows the plaintiff to bring claims that would have been time-barred, "so long as they either are sufficiently related to incidents that fall within the statutory period or are part of a systematic policy or practice of discrimination that took place, at least in part, within the limitations period." *Ciotti*, 2025 WL 308022, at *9 (internal quotation marks omitted) (quoting *Nat'l R.R. Passenger Corp.* v. *Morgan*, 536 U.S. 101, 105 (2002)).  Nevertheless, that doctrine is limited to claims involving ongoing discrimination and does not apply to discrete acts.  *Id.*  Indeed, "[d]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Wright* v. *City of New York*, No. 23 Civ. 3149 (KPF), 2024 WL 3952722, at *4 (S.D.N.Y. Aug. 27, 2024) (internal quotation marks omitted) (quoting *Morgan*, 536 U.S. at 113).

Here, Ms. Fredericks filed her NYSDHR complaint on July 26, 2023, and her EEOC charge on October 23, 2023.  (Fredericks Second Exhibit Set, Ex. 83, 88).  At the very earliest, the 300-day window includes acts occurring on or

14

after September 29, 2022, but not conduct before that date. (*See* DOE Br. 7). Among the four ADA claims that Ms. Fredericks alleged in her FAC, only the third claim of wrongful termination, which allegedly occurred on January 17, 2023, falls entirely within the statute of limitations. (*See* FAC 1, 5-6). Her fourth claim of failure to accommodate, which is predicated on DOE's denial of her request to change desks, is a discrete act that took place on the day that the denial took place — some time on or before May 24, 2022 (*see* Fredericks Aff. ¶¶ 9-16) — and therefore time-barred and not actionable. *See Wright*, 2024 WL 3952722, at *4. Even if the failure to accommodate constituted a continuing violation during the subsequent five weeks that Ms. Fredericks remained on the OPE team without the ability to switch desks (*see* Fredericks Aff. ¶ 30), any such violation would have ended when Ms. Fredericks moved to her new team on June 25, 2022, which is still untimely.

Similarly, Ms. Fredericks's second claim of retaliation alleged that her supervisor, Ms. Hansen, retaliated against her by "sending a series of emails over the course of almost a year, harassing ... [Ms. Fredericks] about her timekeeping and work performance" and by "attempting to extend [Ms. Fredericks's] provisional status." (FAC 5). But Ms. Fredericks left the OPE team on June 25, 2022, meaning that Ms. Hansen was no longer her supervisor at that point. (*Id.* at 1). And Ms. Fredericks did not allege that her new team retaliated against her. Even if the retaliation followed Ms. Fredericks to her new team in the form of an extension of her probationary status, that

decision was also made on June 27, 2022, which falls outside of the 300-day window.  (Fredericks Aff. ¶ 34).

That leaves Ms. Fredericks's first claim of a hostile work environment, which claim is potentially subject to the continuing violation doctrine.  Ms. Fredericks correctly argues that the alleged ongoing harassment falls within the statute of limitations.  (*See* Pl. DOE Opp. 9).  Indeed, while the FAC included allegations of hostility dating back to Ms. Fredericks's time on the OPE team, which preceded the 300-day window, it also contained facts about ongoing harassment on her new team, which allegedly treated her poorly, removed her direct report, and isolated her to work alone.  (FAC 5).  "Hostile work environment claims often fall within the continuing violation exception because … '[t]heir very nature involves repeated conduct … occur[ing] over a series of days or perhaps years.'"  *Ciotti*, 2025 WL 308022, at *9 (quoting *Morgan*, 536 U.S. at 115).  Those allegations are sufficient to support the claim that Ms. Fredericks "experienced harassment on a repetitive, continuous basis" during the actionable time period.  *Id.* at *11.

In sum, the Court determines that Ms. Fredericks's claims of a hostile work environment and wrongful termination are timely, but that her claims of retaliation and failure to accommodate are barred by the 300-day statute of limitations.[5]

---

[5]    Plaintiff does not argue for equitable tolling of her claims.  Even so, equitable tolling would not apply here because Ms. Fredericks did not act with reasonable diligence during the relevant time period, and the circumstances are not so extraordinary to warrant equitable tolling.  *See Zerilli-Edelglass* v. *N.Y.C. Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003).

### b.    Plaintiff Need Not Have Pursued an Article 78 Proceeding

With respect to the claim of wrongful termination, DOE argues that Ms. Fredericks should have challenged her termination in a Civil Practice Law and Rules ("C.P.L.R.") art. 78 ("Article 78") proceeding in New York state court, for which proceeding there is a four-month statute of limitation.  *See Ingrassia* v. *County of Sullivan*, 262 F. Supp. 2d 116, 120-21 (S.D.N.Y. 2003).  (DOE Br. 7-8).  Because Ms. Fredericks's termination was a "governmental determination" made by a municipal entity, DOE contends that the proper forum should have been state court, not federal court.  (DOE Br. 8).  Moreover, because Ms. Fredericks was terminated on January 17, 2023 (FAC 1), DOE adds that she had until May 17, 2023, to bring an Article 78 proceeding in state court, meaning that any claim of wrongful termination brought after the four-month window is time-barred (DOE Br. 8).

The Court disagrees.  To be sure, in evaluating state- and common-law claims for wrongful termination, such as breach-of-employment-contract claims, "New York courts have held that a successful [A]rticle 78 proceeding for reinstatement is a prerequisite to a claim for damages by a discharged public employee." *Ingrassia*, 262 F. Supp. 2d at 120 (citing, among others, *Meyers* v. *City of New York*, 622 N.Y.S.2d 529, 534 (2d Dep't 1995)) (evaluating Civil Service Law violations and breach-of-contract claims); *accord Finley* v. *Giacobbe*, 79 F.3d 1285, 1291-93 (2d Cir. 1996) (discussing the applicability of Article 78 to contract actions against the state government).  But here, Ms. Fredericks "has raised federal claims in federal court." *Purcell* v. *N.Y. Inst. of*

17

*Tech.-Coll. of Osteopathic Med.*, 931 F.3d 59, 64 (2d Cir. 2019). In *Purcell*, where the plaintiff brought ADA claims against his medical school for wrongfully dismissing him, the Second Circuit determined that the statute of limitations for ADA claims "involving decisions by colleges and universities" should not be "any different from other ADA … claims," and it held that the four-month statute of limitations for Article 78 proceedings did not apply to the plaintiff's ADA claims. *Id.* at 63, 65. That is because "there is no plain indication in the ADA … that either federal-court jurisdiction or the scope of a claim under [that] statute[ ] is dependent on state law." *Id.* at 64. Similarly here, Ms. Fredericks "may bring h[er] federal claims against [DOE] in federal court" without worrying about state-law procedures and their corresponding statutes of limitations. *Id.* at 64-65.

### 2.   Plaintiff Failed to State Any ADA Claim

Based on its analysis in the previous section, the Court need only consider the merits of the two timely ADA claims: hostile work environment and wrongful termination. But were it to consider all four claims, the Court would still dismiss the FAC for failure to state a claim. For the sake of completeness, the Court evaluates all four ADA claims below.

#### a.   Plaintiff Failed to State a Hostile Work Environment Claim

To state an ADA hostile work environment claim, a plaintiff must allege "[i] that the harassment was 'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment,'

and [ii] that a specific basis exists for imputing the objectionable conduct to the employer." *Fox* v. *Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019) (quoting *Alfano* v. *Costello*, 294 F.3d 365, 373 (2d Cir. 2002)).  On the first prong, not only must the plaintiff "subjectively perceive the conduct as abusive," but the misconduct "also must be 'severe or pervasive enough to create an objectively hostile or abusive work environment.'"  *Id.* (quoting *Alfano*, 294 F.3d at 374).  In other words, the first prong consists of both subjective and objective elements.  Moreover, courts consider the totality of the circumstances in evaluating the severity and pervasiveness of the alleged conduct.  *Espinoza* v. *CGJC Holdings LLC*, No. 23 Civ. 9133 (DLC), 2024 WL 3520662, at *4 (S.D.N.Y. July 23, 2024); *see Fox*, 918 F.3d at 74 (explaining that the totality of the circumstances includes "proof of 'the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [the plaintiff's] work performance'" (alterations in original) (quoting *Harris* v. *Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993))).

Here, Ms. Fredericks failed to plead sufficient facts showing an objectively hostile work environment.  In the FAC, she alleged that her new team treated her "poorly," "failed to support" and accommodate her, and "removed her direct report and isolated her to work mostly alone."  (FAC 5).  While she may have subjectively perceived the conduct of her new team to be abusive, Ms. Fredericks cannot establish "an environment that a reasonable person would find hostile or abusive."  *Espinoza*, 2024 WL 3520662, at *4

19

(quoting *Moll* v. *Telesector Res. Grp., Inc.*, 94 F.4th 218, 228 (2d Cir. 2024)). Her allegations of poor treatment and failure to support are too abstract and conclusory to show the objective severity and pervasiveness of the misconduct she claimed to have endured. *See Walker*, 717 F.3d at 124 (requiring even *pro se* litigants to state plausible claims for relief).

In addition, the alleged removal of Ms. Fredericks's direct report, which left her to work mostly alone, was not objectively unreasonable, especially because there was no guarantee that Ms. Fredericks would work with a direct report on her new team. Even if the Court were to expand the scope of its evaluation and consider Ms. Hansen's alleged treatment of Ms. Fredericks on her previous team, it would still fail to find an objectively hostile work environment. Ms. Hansen checked on Ms. Fredericks's timekeeping and work performance because she supervised Ms. Fredericks. Ms. Hansen did not physically threaten or humiliate Ms. Fredericks, nor did she interfere with Ms. Fredericks's ability to do her job. *See Fox*, 918 F.3d at 74.

On a more fundamental level, Ms. Fredericks's claim fails because she did not allege "that the harassing conduct was because of [her] protected characteristic." *Espinoza*, 2024 WL 3520662, at *3. Nowhere in the FAC did Ms. Fredericks claim that her new team's treatment of her was based on her mental health issues, or that Ms. Hansen targeted her timekeeping and work performance because she was mentally disabled. *Cf. id.* at *5 (finding a plausible ADA hostile work environment claim because the plaintiff was

20

frequently mocked for her disability in front of other employees). The Court thus dismisses Ms. Fredericks's hostile work environment claim.

### b.    Plaintiff Failed to State a Retaliation Claim

"To establish a prima facie case of retaliation under the ADA, a plaintiff must establish that [i] the employee was engaged in an activity protected by the ADA, [ii] the employer was aware of that activity, [iii] an employment action adverse to the plaintiff occurred, and [iv] there existed a causal connection between the protected activity and the adverse employment action." *Sarno* v. *Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999). Protected activity includes "action taken to protest or oppose statutorily prohibited discrimination," *Vora* v. *N.Y.C. Dep't of Educ.*, No. 22 Civ. 10891 (PGG) (SDA), 2024 WL 1116312, at *10 (S.D.N.Y. Mar. 14, 2024) (internal quotation marks omitted) (quoting *Natofsky* v. *City of New York*, 921 F.3d 337, 354 (2d Cir. 2019)), while adverse employment action consists of "action toward the plaintiff [that] must be 'materially adverse' with respect to 'the terms and conditions of employment,'" *Davis* v. *N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (per curiam) (quoting *Sanders* v. *N.Y.C. Hum. Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)). In addition, the causal-connection prong "requires a plaintiff alleging a claim of employment discrimination to prove that discrimination was the but-for cause of any adverse employment action." *Natofsky*, 921 F.3d at 348.

As the Court has already explained, Ms. Fredericks's retaliation claim is time-barred. But even if it were timely, the claim would fail because Ms.

21

Fredericks did not allege sufficient facts on at least two elements of her retaliation claim. *First*, the factual allegations do not support any adverse employment action. According to Ms. Fredericks, after she submitted a request for a reasonable accommodation, Ms. Hansen retaliated against her by "harassing [Ms. Fredericks] about her timekeeping and work performance," "attempting to extend her provisional status," and refusing to provide her with the requested accommodation "unless she agreed to meet … in-person." (FAC 5). But actions such as "ensur[ing] that Plaintiff clocked-in and -out of work at the appropriate times and scrutiniz[ing] Plaintiff's workplace conduct" and performance do not constitute adverse employment actions, as "they are common and appropriate ways an employer may monitor its employees." *MacEntee* v. *IBM (Int'l Bus. Machs.)*, 783 F. Supp. 2d 434, 446 (S.D.N.Y. 2011). Furthermore, Ms. Hansen did not extend Ms. Fredericks's probationary period, which was ultimately addressed by her new team, and Ms. Fredericks's inability to switch desks did not constitute a material change to the terms and conditions of her employment.

*Second*, Ms. Fredericks has not shown that disability discrimination was the but-for cause for any adverse employment action. Her new team did extend her probationary status — an extension that she was aware of as a possibility and to which she agreed. (*See* Fredericks Aff. ¶ 34). Even assuming that the extension constituted an adverse employment action, Ms. Fredericks did not allege that absent her request for a disability accommodation in her previous role, the extension on her new team would not have occurred. *See Sharikov* v.

*Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 170 (2d Cir. 2024) ("To prove a causal connection, a plaintiff must show that 'but for' the protected activity, the adverse action would not have been taken."). Similarly, assuming that the failure to accommodate was an adverse employment action, Ms. Fredericks did not allege that DOE failed to accommodate her request to switch desks because it discriminated against her for making the request in the first place. Rather, the FAC makes clear that Ms. Fredericks's own unwillingness to meet with her DOE supervisors and discuss her disability needs contributed to DOE's inability to move forward on her request. For these reasons, if the retaliation claim were timely, the Court would still dismiss it under Rule 12(b)(6).

### c.    Plaintiff Failed to State a Wrongful Termination Claim

"In order to establish a prima facie case of discriminatory discharge, a plaintiff must show that: [i] her employer is subject to the ADA; [ii] she suffers from a disability within the meaning of the ADA; [iii] she could perform the essential functions of her job with or without reasonable accommodation; and [iv] she was fired because of her disability." *Ryan* v. *Grae & Rybicki, P.C.*, 135 F.3d 867, 869-70 (2d Cir. 1998); *see also Smith* v. *Hogan*, 794 F.3d 249, 253 (2d Cir. 2015) ("[A] plaintiff must adequately plead that [s]he was terminated because of a qualifying disability."). Because wrongful termination constitutes a form of adverse employment action, the plaintiff must also show that disability discrimination was the "but-for cause" of her termination. *Natofsky*, 921 F.3d at 348.

Here, Ms. Fredericks failed to allege that she was terminated because of her disabled status, even assuming that she adequately pleaded that she suffers from mental disabilities. (*See* DOE Br. 9 (arguing that Plaintiff failed to plead her disabilities)). In the FAC, Ms. Fredericks alleged that she was "unlawfully terminated … in an ambush by [DOE] leadership," who did not "provide substantial reasons for the termination." (FAC 5; *see id.* at 6 (further alleging that DOE "unlawfully terminated [Ms. Fredericks] after she engaged in a protected activity after being denied a reasonable accommodation")). In her accompanying affidavit, however, Ms. Fredericks acknowledged that when she was terminated, she learned that the decision was made pursuant to the disciplinary hearing and investigation into the personal loan that she accepted from Mr. Hickey. (Fredericks Aff. ¶ 75). In other words, Ms. Fredericks did not allege in the FAC — or, for that matter, in the accompanying affidavit and exhibits incorporated by reference — that she was fired because of her mental disabilities. Rather, contrary to her allegations in the FAC, her affidavit makes clear that DOE fired her because of a separate disciplinary matter, not because she requested disability accommodations. Therefore, the Court dismisses Ms. Fredericks's wrongful termination claim.

### d.    Plaintiff Failed to State a Failure-to-Accommodate Claim

"[A] plaintiff makes out a prima facie case of disability discrimination arising from a failure to accommodate by showing each of the following: '[i] [P]laintiff is a person with a disability under the meaning of the ADA; [ii] an employer covered by the statute had notice of h[er] disability; [iii] with

reasonable accommodation, [P]laintiff could perform the essential functions of the job at issue; and [iv] the employer has refused to make such accommodations.'" *McBride* v. *BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 96-97 (2d Cir. 2009) (quoting *Graves* v. *Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 (2d Cir. 2006)). Under the ADA, "reasonable accommodation may include, *inter alia*, modification of job duties and schedules, alteration of the facilities in which a job is performed, acquisition of devices to assist the performance of job duties, and, under certain circumstances, 'reassignment to a vacant position.'" *Id.* at 97 (quoting 42 U.S.C. § 12111(9)(B)). In addition, the ADA "envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." *Jackan* v. *N.Y. State Dep't of Lab.*, 205 F.3d 562, 566 (2d Cir. 2000).

Similar to the retaliation claim, Ms. Fredericks's claim of DOE's failure to accommodate her disabilities is time-barred. Even so, if Ms. Fredericks had made timely allegations, she still would have failed to state a plausible accommodation claim. In the FAC, Ms. Fredericks alleged that DOE did not accommodate her request to "sit in a room where her supervisor was not assigned a desk because the supervisor's conduct demonstrated a pattern of harassing her in writing about her work performance, especially timekeeping and attendance." (FAC 2). But Ms. Fredericks did not explain how the accommodation would help her perform the essential functions of her job, or, indeed, whether the accommodation had any relation to her mental disabilities. As DOE points out, "Plaintiff would still need to regularly interact with her

25

supervisors" regardless of where she sits.  (DOE Br. 11).  Ms. Hansen's supervision over Ms. Fredericks's timeliness and work performance would not have changed based on the location of their work desks.

In addition, Ms. Fredericks claims that DOE failed to provide "a determination as to why [she] could not be accommodated as requested," in violation of the regulations promulgated under the ADA.  (FAC 6). Nevertheless, Ms. Fredericks did not engage in the interactive process envisioned by the ADA to explore whether her disabilities can be reasonably accommodated.  She refused to meet with her supervisors, who did not have the opportunity to understand and provide a reasonable accommodation to help her perform her job duties, let alone the opportunity to make a determination based on full information.  Accordingly, had the failure-to-accommodate claim been timely, the Court still would have dismissed it under Rule 12(b)(6).

### 3.    Plaintiff's Additional Claims in Her Opposition Are Unavailing

In her opposition to DOE's motion to dismiss, Ms. Fredericks raises several additional claims: (i) disability discrimination under the Congressional Accountability Act (the "CAA"), in violation of 2 U.S.C. § 1311; (ii) failure to confer in good faith under the NLRA, in violation of 29 U.S.C. § 158(d); (iii) failure to preserve Plaintiff's welfare, health, and safety under the NLRA, in violation of 29 U.S.C. § 171; (iv) violations of 29 U.S.C. § 218, which is part of the Fair Labor Standards Act ("FLSA"); (v) violations of 29 C.F.R. § 32.13;

26

(vi) violations of 24 C.F.R. § 100.204; and (vii) violations of EEOC Guidance #14.  (Pl. DOE Opp. 4-9).

While the Court may "consider factual allegations made by a *pro se* party in h[er] papers opposing" a motion to dismiss, *Walker*, 717 F.3d at 122 n.1, the Court need not consider "entirely new claims that do not arise out of the facts alleged in the complaint," *Vlad-Berindan* v. *MTA N.Y.C. Transit*, No. 14 Civ. 675 (RJS), 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014).  Here, the Court finds that Ms. Fredericks's additional claims in her opposition are new claims that cannot be supported by the existing allegations in her FAC.  For example, as DOE points out, the CAA claim is completely inapplicable because Ms. Fredericks was not a congressional employee covered by the statute.  (DOE Reply 2).  Similarly, she did not make any wage-based allegations in her FAC to support a FLSA claim.  (*Id.* at 3).  Because Ms. Fredericks's opposition raises new legal theories with no factual basis in the FAC or other supporting papers, the Court declines to consider those claims.

27

**CONCLUSION**

For the foregoing reasons, UFT's motion to dismiss is GRANTED, and DOE's motion to dismiss is also GRANTED.

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:   December 29, 2025
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge